United States Courts
Southern District of Texas
FILED
*January 12, 2026*
Nathan Ochsner, Clerk of Court

United States District Court
Southern District of Texas
**ENTERED**
January 12, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| RAYMOND COBB, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Case No. 2:12-CV-00166 | |
| § | | |
| ERIC GUERRERO, *et al.*, § | | |
| Defendants. § | | |

# MEMORANDUM AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

For the reasons discussed below, the district court should DENY the motion to dismiss the construed motion for civil contempt. (Doc. No. 363.).[1] The district court should order that the alleged contemnors show cause why they should not be held in contempt of the court's injunction.

### A. *Proceedings.*

The district court previously entered judgment in favor of plaintiff Raymond Cobb in this case, and in February 2019 enjoined the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") from enforcing its male grooming policy against Cobb "with respect to the rules preventing inmates from growing their hair without restriction in length and wearing it loose." (Doc. No. 325.) That injunction is discussed in greater detail below.

Cobb filed a document contending that the district court's order was ignored and violated in January 2022. According to Cobb, when he was transferred to a new TDCJ-CID unit, he was ordered to get a haircut and complied with that order. (Doc. No. 356.) Cobb's submitted

---

[1] The case has been referred to the undersigned for case management and recommendations on dispositive matters. *See* 28 U.S.C. § 636.

document was filed in this case – the case in which the injunction was entered.  *See* Doc. No. 355-1.[2]  The Court has construed Cobb's filing as a motion for civil contempt.

In his construed motion (the "Contempt Motion"), Cobb has named three alleged contemnors: (1) Texas Department of Criminal Justice ("TDCJ") Director Bryan Collier ("Director Collier"); (2) TDCJ-CID Allred Unit Senior Warden J. Smith ("Warden Smith"); and (3) "Sergeant Rushing," an Allred Unit employee.  (Doc. No. 356, p. 4.)  Cobb claims that Sergeant Rushing forced him to get his hair cut.  *Id.* at 5.  He alleges that Director Collier "failed to enforce previous court order."  *Id.* at 4.  Warden Smith, Cobb says, "failed to notify staff and enforce court order."  *Id.*  Cobb asks the Court to grant declaratory relief, "injunctive relief to prevent future violations," compensatory damages for the violation of his rights, and punitive damages for ignoring the injunction.  *Id.* at 5.

The undersigned ordered service of process on Director Collier, Warden Smith, and Sergeant Rushing and directed the filing of a responsive pleading.  (Doc. No. 360.)  Through counsel, they filed a motion to dismiss the Contempt Motion.  (Doc. No. 363.)  Cobb has responded.  (Doc. No. 365.)  The alleged contemnors have not replied to Cobb's response.

**B.  Law.**

District courts possess the inherent authority to enforce compliance with their own lawful orders through the civil contempt process.  *See Spallone v. United States*, 493 U.S. 265, 276 (1960).  In our legal system, there are two types of contempt: civil and criminal.  *See Int'l Union,*

---

[2] Cobb originally attempted to file his document as a separate civil action under § 1983.  *See Cobb v. Collier*, Case No. 2:23-cv-00281 (S.D. Tex.)  That case was transferred to the Northern District of Texas in November 2023. After Cobb amended that complaint, it became apparent that Cobb was seeking redress for violation of the injunction as part of his claims asserting violations of his civil rights.  The district court in the Northern District then severed Cobb's claims arising from the alleged violation of the injunction and transferred them back to this Court "for consideration by U.S. District Judge Nelva Gonzales Ramos."  *See* Doc. No. 357, p. 3.

*United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27 (1994). "Civil contempt services two purposes: 'It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct.'" *Donohue v. Wang*, No. 1:22-CV-00583, 2023 WL 6317451, at *2 (W.D. Tex. Sept. 28, 2023), *adopted*, 2023 WL 7103270 (W.D. Tex. Oct. 27, 2023) (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost*, 68 F.3d at 961-62.

Federal Rule of Civil Procedure 65(d)(2) prescribes who is bound by injunctions:

(2) Persons Bound.  The order binds only the following who receive actual notice of it by personal service or otherwise:

> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

The term "other persons who are in active concert or participation" includes not just the parties but also "'those identified with them in interest … or subject to their control ….  [D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.'" *Ganpat v. Eastern Pacific Shipping PTE, Ltd.*, 66 F.4th 578, 585-86 (5th Cir. 2023) (quoting *United States v. Jenkins*, 974 F.2d 32, 36 (5th Cir. 1992), in turn quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)).

### C. The lawsuit and the injunction.

Cobb's lawsuit was consolidated with cases filed by two other TDCJ-CID inmates under the Religious Liberty and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Cobb and his co-plaintiffs alleged that TDCJ-CID violated their right to grow their hair long consistent with their Native American religious beliefs. The relevant defendant for purposes of the consolidated case was Lorie Davis, who was sued in her official capacity as the director of TDCJ-CID. The district court ruled in favor of Cobb and his co-plaintiffs, and ordered:

> Defendant is enjoined from enforcing its male grooming policy against the Plaintiffs with respect to the rules preventing inmates from growing their hair without restriction in length and wearing it loose.

(Doc. No. 325.)

### D. The defendants' dismissal motion and Cobb's response.

Seeking dismissal of Cobb's construed Contempt Motion, Director Collier, Warden Smith, and Sergeant Rushing argue that none of them had actual notice of the injunction, or that they were acting in concert with the original parties in this case. (Doc. No. 363, pp. 11-13.) They also argue that Cobb is not entitled to the monetary damages he seeks, contending that punitive damages are not available in a civil contempt case and that coercive and compensatory damages are inappropriate under the circumstances. *Id.* at 13-15. Responding, Cobb argues that he did indeed personally notify Warden Smith and Sergeant Rushing of the injunction. (Doc. No. 365, p. 5.) He also argues that the issue of damages should be resolved by a trial. *Id.* at 5-6.

### E. Discussion.

#### 1. Parties to this contempt case.

The injunction that Cobb won prohibits TDCJ-CID from requiring Cobb to cut his hair. Cobb's construed claim is that he was nevertheless ordered by a TDCJ-CID employee (Sergeant

Rushing) to cut his hair, and that two higher-level employees (Director Collier and Warden Smith) failed to prevent that from happening. This action allegedly occurred despite Cobb's alleged statements directly to Warden Smith and Sergeant Rushing that he had a court order allowing him to wear his hair long. *See* Doc. No. 356, pp. 5, 7, 9.

Cobb's lawsuit against Lorie Davis in her official capacity was properly treated as a suit against TDCJ-CID itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[3] Thus, the injunction ordered by the district court applied (and continues to apply) to TDCJ-CID, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of those people, so long as they received actual notice of the injunction "by personal service or otherwise." *See* Fed. R. Civ. P. 65(d)(2).

Cobb also names Director Collier in his construed Contempt Motion, but Director Collier is not the TDCJ-CID director – rather, he is the director of the Texas Department of Criminal Justice, of which TDCJ-CID is a subordinate division. *See* Tex. Gov't Code § 493.002(a)(2). TDCJ-CID's director is now Eric Guerrero ("Director Guerrero"), who has been substituted as a defendant in this case in his official capacity. *See* Doc. No. 358, p. 1 & n.1. Director Guerrero, in his official capacity, is bound to honor the injunction against his agency, TDCJ-CID. At the conclusion of this memorandum, the undersigned will recommend that the district court order Director Guerrero to file an answer to Cobb's Contempt Motion.

Cobb alleges that Warden Smith and Sergeant Rushing were both TDCJ-CID employees at the Allred Unit. (Doc. No. 256, p. 4.) Thus, both were bound by the injunction if they received actual notice of it. *See* Fed. R. Civ. P. 65(d)(2)(B). It was not necessary for Cobb to further allege that Warden Smith or Sergeant Rushing also were "in active concert or

---

[3] The district court recognized this as well. *See* Doc. No. 322, p. 1 n.1.

participation" with TDCJ-CID or that they aided and abetted a violation of the injunction: the injunction bound them simply because they were TDCJ-CID employees.

### 2. *Actual notice of the injunction.*

Warden Smith and Sergeant Rushing argue that Cobb "effectively concedes" that they did not have actual notice of the injunction. (Doc. No. 363, p. 12.) Cobb's motion, however, contains allegations of such knowledge. Cobb alleges that he met with Warden Smith on January 5, 2022 "about his long hair. [Cobb] notified Smith of court order …." (Doc. No. 356, p. 5.) Cobb also alleges that he told Sergeant Rushing that he had a federal court order authorizing him to have his hair long. Sergeant Rushing allegedly responded "No you're not, nobody is allowed long hair. I don't care who you are, you're cutting that hair." Cobb allegedly responded:

> "I have the paperwork from federal court that authorizes me to grow long hair. May I show it to you?" She said, "No, I'm not looking at any paperwork. I'm giving you a direct order, cut that hair."

*Id.* at 7. Cobb therefore plausibly alleges that he personally and specifically notified Warden Smith and Sergeant Rushing of the existence of the district court's injunction allowing him to grow his hair long.

As discussed above, Director Guerrero, in his official capacity, is bound to honor the injunction against his agency, TDCJ-CID. And TDCJ-CID itself is the same party against whom the district court's injunction was directed, so it is properly charged with actual knowledge of the injunction. *See* Fed. R. Civ. P. 65(d)(2)(A).

### 3. Available remedies, and their effect (or lack thereof) on this dismissal motion.

As his requested relief, Cobb lists the following, verbatim: "declaratory relief, injunctive relief to prevent future violations, compensatory damages for violating rights, punitive damages for ignoring court order." (Doc. No. 356, p. 5.) The defendants go to some trouble to attack Cobb's request for money damages. They contend that punitive damages are unavailable in a civil contempt case. (Doc. No. 363, p. 13.)[4] They also argue that neither coercive nor compensatory damages are appropriate in this case. *Id.* at 14-15. The defendants do not specifically contend that Cobb's Contempt Motion should be dismissed on the basis that certain forms of relief are allegedly unavailable. The undersigned, however, briefly addresses the defendants' arguments.

Civil contempt sanctions must be "remedial" in nature and designed to benefit the complainant by compelling future compliance with the court's order, either by coercing the defendant into compliance or compensating the complainant for losses sustained from noncompliance. *See Carter v. Local 556, Transport Workers Union of Am.*, 138 F.4th 164, 208 (5th Cir. 2025). A "punitive" sanction indicates a finding of criminal contempt, a punishment for defiance of the court and a deterrent to similar actions. *See id.* (citing *In re Stewart*, 571 F.2d 958, 964 (5th Cir. 1978)).

Although the Court has construed Cobb's motion as one for civil contempt (Doc. No. 360, p. 2), Cobb's inclusion of "punitive damages" as a requested form of relief does not warrant

---

[4] The defendants also cite to Plaintiff's 2023 complaint in *Cobb v. Collier*, Case No. 2:23-cv-00281 (S.D. Tex.) as evidence that he is seeking punitive damages. *See* Doc. No. 363, p. 13 (citing Doc. No. 356, p. 18 ¶ 26.) The *Cobb v. Collier* complaint requests declaratory and injunctive relief, as well as compensatory damages "for the unnecessary cutting of his hair in violation of this Court's previous order instructing TDCJ not to …." (Doc. No. 356, p. 18 ¶ 26.) There is no mention of punitive damages in that complaint.

dismissal of the Contempt Motion. Rather, treatment of the motion as one for civil contempt simply cabins the bases for and forms of relief that can be granted upon a finding of such contempt.[5]

The defendants also argue that coercive damages for civil contempt are not available because Cobb's claim "has been moot since January 5, 2022," the date on which he was ordered to cut his hair. (Doc. No. 363, p. 14.) They contend that a coercive sanction is mooted when the proceeding out of which it arises is terminated, and that Cobb has not alleged that he has been ordered to cut his hair since January 5, 2022. *See id.* Some civil contempt remedies, such as an order for money damages, are properly applied as a means of coercing a defendant's compliance with a court order, and it is possible that the alleged order for Plaintiff to cut his hair was a "one-off" not meriting any form of coercion for future compliance. But that question is one for the district court to decide, and it is not a basis for dismissing Cobb's Contempt Motion, which broadly seeks various forms of relief in hopes that such a haircut order will not be repeated in the future.

Finally, the defendants argue that Cobb is ineligible for an award of compensatory contempt damages. They claim that Cobb is "artfully recast[ing]" the RLUIPA claim for which he received the injunction into a contempt claim for which damages are permissible. (Doc. No. 363, pp. 14-15.) And because Texas has not waived its sovereign immunity to private suits for money damages for RLUIPA violations, the defendants argue, Cobb cannot obtain an award of

---

[5] The defendants intimate that the law of the case doctrine prohibits the treatment of Cobb's motion as one for criminal contempt. *See* Doc. No. 363, p. 13. The district court, however, is free to revisit that question and can certainly treat Cobb's motion as one for criminal contempt, so long as it provides the requisite due process associated with such proceedings. Additionally, "a court is not bound by how a party labels its motion;" rather, "'[t]he relief sought, that to be granted, or within the power of the court to grant, should be determined by substance, not a label.'" *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 985 (5th Cir. 1996) (en banc) (alteration in original)).

compensatory damages. *See id.* Again, however, the availability or unavailability of money damages is not a basis on which to dismiss Cobb's Contempt Motion, which seeks a wider range of relief than damages.

### *4. Other arguments.*

The defendants ask the Court to dismiss the Contempt Motion for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. No. 363, p. 15.) They do not, however, attempt to explain why the Court lacks jurisdiction to consider the Contempt Motion. The district court should reject the defendants' argument as inadequately briefed. The defendants' argument is also incorrect, because the Court has the inherent authority to issue contempt sanctions in order to enforce its own orders.

The defendants also ask the Court to dismiss the Contempt Motion for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 363, p. 15.) They contend that Cobb has not plausibly alleged how they placed themselves within the personal jurisdiction of the district court by actively aiding and abetting the original parties to this case. *Id.* at 14. This argument lacks merit. First, Cobb has plausibly alleged that Warden Smith and Sergeant Rushing were bound by the injunction because they were TDCJ-CID employees with actual notice of the injunction, and that TDCJ-CID, as a party, is bound by the injunction as well. *See* Fed. R. Civ. P. 65(d)(2)(A)-(B). As discussed above, Cobb was not required to allege further that Warden Smith or Sergeant Rushing also actively aided and abetted the original parties to this case.

Finally, the defendants ask for dismissal based on "misjoinder." (Doc. No. 363, p. 15.) Other than a general boilerplate discussion of what "misjoinder" is, the defendants offer no

explanation why misjoinder might exist in this case or why it requires dismissal of the Contempt Motion. The district court should reject the defendants' argument as inadequately briefed.

### E. Conclusion and recommendations.

The district court should take the following actions:

- DENY the motion to dismiss the Contempt Motion (Doc. No. 363); and

- ORDER Director Guerrero, Warden Smith, and Sergeant Rushing to show cause why they should not be held in contempt of the district court's injunction by filing a written answer admitting or denying each of Cobb's allegations in the Contempt Motion. The district court should then decide what further proceedings, if any, are appropriate.

### F. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

  SIGNED on July 16, 2025.

                    _____
                    MITCHEL NEUROCK
                    United States Magistrate Judge